## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **LINDA R. HICKS,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | |
| | § | **CIVIL ACTION NO. 3-22-CV-** |
| | § | **00072** |
| **BAYLOR UNIVERSITY MEDICAL** | § | |
| **CENTER,** | § | **JURY DEMANDED** |
| | § | |
| **Defendant.** | § | |

### DEFENDANT'S MOTION TO STRIKE EXPERT TESTIMONY
### OF DR. SUNEIL KOLIWAD

Respectfully submitted,

*/s/ Alicia Sienne Voltmer*
Alicia Sienne Voltmer
Texas Bar No. 00797605
alicia.voltmer@gtlaw.com
Peter S. Wahby
Texas Bar No. 24011171
peter.wahby@gtlaw.com

**GREENBERG TRAURIG, LLP**
2200 Ross Avenue, Suite 5200
Dallas, Texas 75201
Telephone: (214) 665-3600
Facsimile: (214) 665-3601

**ATTORNEYS FOR DEFENDANT**

# TABLE OF CONTENTS

NATURE AND STAGE OF PROCEEDINGS ........................................................1

STATEMENT OF ISSUES TO BE RULED UPON BY COURT .........................2

BRIEF SUMMARY OF THE ARGUMENTS...........................................................3

EVIDENCE TO SUPPORT MOTION.......................................................................4

LEGAL STANDARD...................................................................................................4

    A.    An expert must be qualified ...............................................................5
    B.    Expert testimony must be relevant......................................................6
    C.    An expert's testimony must be reliable...............................................6

        1.    Mere speculation testimony is unreliable ..................................7
        2.    An expert can't render conclusions of law ................................8
        3.    Reliable testimony must be based on accurate facts..................8

ARGUMENT AND AUTHORITIES..........................................................................9

    A.    The Court should strike Dr. Koliwad's expert testimony in its entirety because he's unqualified to render such testimony in this case ............................................................................................9
    B.    The Court should strike Dr. Koliwad's testimony because it's irrelevant..........................................................................................10

        1.    Plaintiff "had a reasonable justification to seek an exemption."...................................................................................11
        2.    "BUMC should've been aware of the connection [between diabetes and severe COVID]."....................................11
        3.    "[I]t was medically unreasonable for Hicks' exemption request "to have failed to result in an exemption."...................12
        4.    "BUMC should've amended the exemption criteria to include high-risk conditions..."................................................13
        5.    "Ms. Hicks [sic] request for an exemption…should've been granted." .........................................................................14
        6.    "There was no medically justifiable reason to ask an individual of Ms. Hicks' age …to expose herself to individuals who could be infected with COVID-19." ..............15

7.    "Moreover, failing to exempt such individuals is not justifiable on ethical grounds." ................................................. 15

C.    The Court should strike Dr. Koliwad's testimony because it's unreliable ........................................................................ 17

1.    "This loosening of restrictions…[meant Plaintiff] would likely be involved in caring for COVID-19 infected individuals." ...................................................................... 17

2.    "Because of this reversal by BUMC and the fact that Nurse Hicks was now being expected to work as usual…she felt forced to put in for retirement…" .................... 18

3.    "This [BUMC's post-retirement offer to Plaintiff to work in areas of "greatest need"] of course meant that she would once again be asked to care for individuals likely to be infected with COVID-19." ............................................... 19

4.    "…she unnecessarily forewent more substantial seniority-based retirement benefits." ......................................... 19

5.    "As such, Ms. Hicks chose to remain retired and has unfortunately remained so as to this day." ............................... 20

CONCLUSION AND PRAYER ............................................................................ 20

# TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*Aircraft Holding Sols., LLC v. Learjet, Inc.*,
    No. 3:18-cv-823-D, 2022 U.S. Dist. LEXIS 134880,
    2022 WL 3019795 (N.D. Tex. July 29, 2022)............................................2, 5, 6

*Atl. Specialty Ins. Co. v. Porter, Inc.*,
    742 F. App'x 850 (5th Cir. 2018) ........................................................7

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993).................................................2, 3, 6, 7, 9

*Drake v. Spring Indep. Sch. Dist.*,
    No. 20-20376, 2021 U.S. App. LEXIS 22187 (5th Cir. July 27,
    2021) ....................................................................................14

*Galvez v. KLLM Transp. Servs., LLC*,
    575 F. Supp. 3d 748 (N.D. Tex. 2021) .............................................2

*Goodman v. Harris Cnty.*,
    571 F.3d 388 (5th Cir. 2009) .........................................................8

*Hathaway v. Bazany*,
    507 F.3d 312 (5th Cir. 2007) .......................................................7, 8

*Jacked Up, L.L.C. v. Sara Lee Corp.*,
    807 F. App'x 344 (5th Cir. 2020) ...............................................3, 6, 7

*Jacked Up, LLC v. Sara Lee Corp.*,
    2018 U.S. Dist. LEXIS 29537 (N.D. Tex. 2018), *aff'd*, No. 3:11-
    cv-3296-L, 2018 U.S. Dist. LEXIS 74721, 2018 WL 2064126
    (N.D. Tex. May 2, 2018) ..........................................................4, 7, 8

*Kim v. Nationwide Mut. Ins. Co.*,
    614 F. Supp. 3d 475 (N.D. Tex. 2022) .............................................8

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999)..................................................................5, 8

*LeMaire v. Louisiana*,
    480 F.3d 383 (5th Cir. 2007) .......................................................13

*Owen v. Kerr-McGee Corp.*,
    698 F.2d 236 (5th Cir. 1983) ........................................................8

*Paz v. Brush Engineered Materials, Inc.*,
    555 F.3d 383 (5th Cir. 2009) ............................................................................3, 7

*Ramos v. Home Depot Inc.*,
    No. 3:20-cv-1768-X, 2022 U.S. Dist. LEXIS 36418, 2022 WL
    615023 (N.D. Tex. Mar. 1, 2022) ....................................................................4, 8

*In re: Taxotere (Docetaxel) Prod. Liab. Litig.*,
    26 F.4th 256 (5th Cir. 2022) ................................................................................6

*United States v. Sosa*,
    513 F.3d 194 (5th Cir. 2008) ...............................................................................5

*United States v. Tucker*,
    345 F.3d 320 (5th Cir. 2003) ...............................................................................6

## Other Authorities

Fed. R. Evid. 401 .......................................................................................................6

Fed. R. Evid. 702 ...............................................................................................2, 4, 5

Defendant Baylor University Medical Center ("BUMC")[1] moves to strike the expert testimony, including the purported expert report,[2] of Dr. Suneil Koliwad and in support shows as follows:

<u>**NATURE AND STAGE OF PROCEEDINGS**</u>

This is an age discrimination, disability discrimination, and failure to accommodate case under the Age Discrimination in Employment Act ("ADEA") and American with Disabilities Act, as amended ("ADA"), respectively. Plaintiff Linda Hicks, a Registered Nurse who worked in BUMC's Pre-Admission Testing Department ("PAT department"), contends BUMC failed to accommodate her diabetic condition during the COVID-19 pandemic when it granted her a COVID-19 medical exemption from caring for COVID-19-positive patients and she subsequently refused to perform COVID-19 nasal swabs on prescreened patients when BUMC determined the exemption didn't apply to the PAT department because the patients would be prescreened for COVID-19; Plaintiff *admittedly* refused to engage in the interactive process to identify any potential accommodations that would prevent her from performing the nasal swabs, refused all of the reasonable accommodations offered by BUMC, and chose to retire. Plaintiff has retained Dr.

---

[1]BUMC is part of the Baylor Scott & White Health System and may also be referred to as "Baylor" herein.

[2]In every instance wherein BUMC asks the Court to strike Dr. Koliwad's expert testimony, BUMC includes by reference Dr. Koliwad's expert report.

Suneil Koliwad, a Board Certified Endocrinologist, to provide purported expert testimony related to BUMC's *medical judgment* concerning how it applied its COVID-19 exemption policy, which has no bearing on any legal claim in this case.[3]

The parties have engaged in discovery and taken depositions, and the discovery deadline is November 30, 2023.

## STATEMENT OF ISSUES TO BE RULED UPON BY COURT

Under Rule 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993), a "court may admit proffered expert testimony only if the proponent, who bears the burden of proof, demonstrates that (1) the expert is qualified, (2) the evidence is relevant to the suit, and (3) the evidence is reliable." *Galvez v. KLLM Transp. Servs., LLC*, 575 F. Supp. 3d 748, 759 (N.D. Tex. 2021).

In this Motion, BUMC asks the Court to rule on the following issues:

1.      Whether Dr. Koliwad, is qualified to provide expert testimony in this case.  Before a district court may allow a witness to testify as an expert, it must be assured that the proffered witness is qualified to testify by virtue of his knowledge, skill, experience, training, or education.  *Aircraft Holding Sols., LLC v. Learjet, Inc.*, No. 3:18-cv-823-D, 2022 U.S. Dist. LEXIS 134880, 2022 WL 3019795, at *5 (N.D. Tex. July 29, 2022).

---

[3]For clarity, Dr. Koliwad doesn't offer any expert opinions related to Plaintiff's age discrimination claim.

2.      Whether any testimony by Dr. Koliwad is relevant to this case.  "Expert testimony which does not relate to any issue on [sic] the case is not relevant and, ergo, not helpful." *Daubert*, 509 U.S. at 590.

3.      Whether Dr. Koliwad's testimony is reliable.  "Expert evidence that is not reliable at each and every step is not admissible." *Jacked Up*, *L.L.C. v. Sara Lee Corp.*, 807 F. App'x 344, 348 (5th Cir. 2020).  "Where an expert's opinion is based on insufficient information, the analysis is unreliable."  *Paz v. Brush Engineered Materials, Inc.,* 555 F.3d 383, 388 (5th Cir. 2009).

## BRIEF SUMMARY OF THE ARGUMENTS

BUMC contends Dr. Koliwad is unqualified to testify as an expert in this ADA case because he has no personal knowledge regarding the ADA, its regulations, BUMC's operations and priorities, management of the COVID-19 pandemic by the Texas Governor, or Plaintiff's job duties.

Additionally, BUMC contends Dr. Koliwad's testimony is irrelevant because he admits he is providing no expert testimony related to any legal issue in this case and more specifically, because he seeks to provide *medical testimony*, which has no bearing on any legal issues in this matter.

And finally, BUMC contends Dr. Koliwad's testimony is unreliable because he admits that the bases for a number of his opinions are purely speculative and/or contradicted by undisputed facts.

## EVIDENCE TO SUPPORT MOTION

Defendant relies on the following evidence in support of this Motion:

Exhibit ("Ex.") A:  Excerpts, including exhibits, from the November 1, 2023 deposition of Dr. Suneil Koliwad.

Exhibit B:  Excerpts, including exhibits, from the August 7, 2023 deposition of Plaintiff Linda Hicks.

## LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert testimony as evidence and permits opinion testimony from a witness qualified as an expert by knowledge, skill, experience, training, or education: (1) if the expert's knowledge will assist the trier of fact; (2) the testimony is based on sufficient facts or data; (3) the testimony is the product of reliable principles and methods; and (4) the expert has reliably applied the principles and methods to the facts of the case. *Ramos v. Home Depot Inc.*, No. 3:20-cv-1768-X, 2022 U.S. Dist. LEXIS 36418, 2022 WL 615023, at *2 (N.D. Tex. Mar. 1, 2022).

In its gatekeeping role, the Court determines the admissibility of expert testimony based on Rule 702, *Daubert*, and its progeny. *Jacked Up, LLC v. Sara Lee Corp.*, 2018 U.S. Dist. LEXIS 29537, *6-7 (N.D. Tex. 2018), *aff'd*, No. 3:11-cv-3296-L, 2018 U.S. Dist. LEXIS 74721, 2018 WL 2064126 (N.D. Tex. May 2, 2018). Under Rule 702 and *Daubert* and in its gatekeeping role, the Court must permit only

reliable and relevant testimony from qualified witnesses to be admitted as expert testimony. *Daubert's* general holding setting forth the trial judge's general gatekeeping obligation applies not only to testimony based on scientific knowledge, but also to testimony based on technical and other specialized knowledge. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). Plaintiff bears the burden of proof to demonstrate that: (1) Dr. Koliwad is qualified, (2) the evidence is relevant to the suit, and (3) the evidence is reliable. *Id.* at 147.

A. **An expert must be qualified**.

Dr. Koliwad must be (but is not) qualified to testify by virtue of his knowledge, skill, experience, training, or education. The distinction between lay and expert witness testimony is that lay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field. *United States v. Sosa,* 513 F.3d 194, 200 (5th Cir. 2008). A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject. *Aircraft Holding*, 2022 U.S. Dist. LEXIS 134880, 2022 WL 3019795, at *15.

If the expert is qualified, Rule 702 requires the trial court to make a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology

properly can be applied to the facts in issue. Expert testimony must be both relevant and reliable to be admissible. *United States v. Tucker*, 345 F.3d 320, 327 (5th Cir. 2003) (additional citation omitted).

### B.    Expert testimony must be relevant.

Expert testimony is relevant if it assists the trier of fact in understanding the evidence or determining a fact in issue. *Daubert*, 509 U.S. at 591. Federal Rule of Evidence 401 further clarifies that relevant evidence is evidence that has "any tendency to make a fact more or less probable than it would be without evidence" and "is of consequence in determining the action." *Id.* "Relevance depends upon whether [the expert's] reasoning or methodology properly can be applied to the facts in issue." *Aircraft Holding*, 2022 U.S. Dist. LEXIS 134880, 2022 WL 3019795, at *6, and to be relevant, the expert's reasoning or methodology must be properly applied to the facts in issue. *In re: Taxotere (Docetaxel) Prod. Liab. Litig.*, 26 F.4th 256, 268 (5th Cir. 2022).

### C.    An expert's testimony must be reliable.

As to the reliability requirement, the analysis applies to all aspects of an expert's testimony---the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, etc., and mandates that an expert opinion be grounded in the methods and procedures of science. *Jacked Up*, 291 F. Supp. 3d at 801. "Expert evidence that is not reliable at each and every step is not

admissible." *Jacked Up*, 807 F. App'x at 348 (citation omitted). "Where an expert's opinion is based on insufficient information, the analysis is unreliable." *Paz,* 555 F.3d at 388.

### 1. *Mere speculation testimony is unreliable*

An expert's testimony must be more than subjective belief or unsupported speculation. *Daubert*, 509 U.S. at 590. A court need not admit testimony that is connected to existing data only by the ipse dixit - that is, an unproven and unsupported assertion resting only on the authority - of the expert. *Atl. Specialty Ins. Co. v. Porter, Inc.*, 742 F. App'x 850, 855 (5th Cir. 2018). "[W]ithout more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible." *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007). While experts are permitted to rely on assumptions when reaching their opinions, those assumptions must have some factual basis in the record and an underlying rationale. *Jacked Up*, 2018 U.S. Dist. LEXIS 74721, at *28-29.

A court normally analyzes questions of reliability using the five nonexclusive factors known as the *Daubert* factors: (1) whether the expert's technique can be or has been tested; (2) whether the method has been subjected to peer review and publication; (3) the known or potential rate of error of a technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) the degree to which the technique or theory has been generally accepted in the scientific

community. *Kumho Tire*, 526 U.S. at 149-150.  But these factors may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of the testimony. *Kim v. Nationwide Mut. Ins. Co.*, 614 F. Supp. 3d 475, 486 (N.D. Tex. 2022).

### 2.    *An expert can't render conclusions of law*

While experts may offer their opinions on ultimate issues, they "may never render conclusions of law."  *Goodman v. Harris Cnty.*, 571 F.3d 388, 399 (5th Cir. 2009).  Allowing an expert to give his opinion on legal conclusions to be drawn from the evidence both invades the Court's province and is irrelevant.  *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983).

### 3.    *Reliable testimony must be based on accurate facts*

The *Daubert* reliability analysis applies to, among other things, the facts underlying the expert's opinion, and an opinion based on insufficient, erroneous information fails the reliability standard. *Jacked Up*, 2018 U.S. Dist. LEXIS 74721, at *28-29.Simply stated, a court need not admit testimony based on indisputably wrong facts. *Ramos*, 2022 U.S. Dist. LEXIS 36418, 2022 WL 615023, at *3.  "And although the *Daubert* reliability analysis is flexible and the proponent of the expert evidence need not satisfy every one of its factors, the existence of sufficient facts ... is in all instances mandatory." *Hathaway,* 507 F.3d at 318.   "[T]he proponent has the burden of establishing that the pertinent admissibility requirements are met by a

preponderance of the evidence." *Daubert*, 509 U.S. at 592 n.10.

## <u>ARGUMENT AND AUTHORITIES</u>

A.    <u>The Court should strike Dr. Koliwad's expert testimony in its entirety because he's unqualified to render such testimony in this case</u>.

Dr. Koliwad is unqualified to testify as an expert in this matter because, as demonstrated through his testimony, he lacks the knowledge, experience, and education to provide any testimony related to the ADA claims in this case:

● He admittedly knows nothing about BUMC's operations or its COVID-19-related needs, and is not holding himself out as an expert in running hospital systems. App. at 6; 19 (Ex. A at 30:14-31:9; 31:12-17; 33:21-23; 131:1-8).

● He knows nothing about Texas' COVID-19-related restrictions throughout the pandemic. App. at 4; 8-9; 10 (Ex. A at 23:18-21; 40:13-20; 41:3-42:2; 46:14-48:8).

● He isn't familiar with BUMC's PAT department where Plaintiff worked including its staffing needs and responsibilities. App. at 5-6; 11 (Ex. A at 26:23-27:5; 28:10-17; 29:19-30:7; 31:1-9; 33:24-25; 71:24-72:6).

● He knows nothing about the ADA or its regulations and has never published any papers on the ADA or the interactive process. App. at 6 (Ex. A at 32:19-33:20).

● He's never given expert testimony on the ADA or produced an expert report related to the ADA. App. at 7 (Ex. A at 34:14-19).

● He's not offering any expert testimony on Plaintiff's alleged job search for other positions within BUMC as an alternative accommodation. App. at 12 (Ex. A at 94:18-21).

● He has no evidence BUMC failed to comply with any local, state, or federal regulations related to its handling of the COVID-19 pandemic. App. at 4-5 (Ex. A at 25:4-26:22).

● He has no personal knowledge related to the sequence of the nasal swabbing of prescreened patients to which Plaintiff objected, and that forms the basis of her failure to accommodate claim.  App. at 15 (Ex. A at 112:14-17; 113:7-13).

● He's offering no opinion that Plaintiff would've contracted COVID-19 had she performed the nasal swabbing of prescreened patients to which she objected.  App. at 22 (Ex. A at 142:17-25).

In short, Dr. Koliwad knows nothing about the bases for BUMC's COVID-19 medical exemption policy; how and why it was applied to the PAT department where Plaintiff worked; how the Texas Governor's directives impacted BUMC's decision making processes during the pandemic; how the ADA applies (or doesn't apply) to this case; and whether BUMC fulfilled its ADA-related obligations, warranting the requested relief.

### B.    <u>The Court should strike Dr. Koliwad's testimony because it's irrelevant</u>.

Plaintiff brings a claim for disability discrimination contending, admittedly inaccurately, that her "health exemption was revoked" and she was allegedly "forced to retire" along with a claim for failure to accommodate based on nothing more than her admittedly personal belief that, "I felt like I wanted to stay where I was [in the Chart Room]."  App. at 104; 106; 108 (Ex. B at 183:1-9; 194:7-12; 207:20-208:3).

The Court should strike Dr. Koliwad's expert testimony because Dr. Koliwad *admittedly* fails to opine on *any* issue relevant to the case:

1. ***Plaintiff "had a reasonable justification to seek an exemption."[4]***

This "expert opinion" is irrelevant because it's undisputed that Plaintiff not only sought but was granted a COVID-19 work exemption by BUMC:

> Q.    (By Ms. Voltmer)  This is a May 13, 2020, email from COVID19 Exemptions to you, copying Sandy Waggoner, advising that your exemption has been approved, correct?
>
> A.    Correct.

App. at 97, and 113-114; 115 (Ex. B at 138:11-16, and Dep. Ex. 62, 67).  Dr. Koliwad admits he knew BUMC granted Plaintiff the exemption she requested, which was an exemption *from caring for COVID-19 positive patients*.  App. at 13, and 83-87 (Ex. A at 100:18-101:14, and Dep. Ex. 16a).  Because it's undisputed Plaintiff sought and BUMC granted the exemption at issue, Dr. Koliwad's testimony is of no use to a jury and is therefore irrelevant.

2. ***"BUMC should've been aware of the connection [between diabetes and severe COVID]."[5]***

This testimony is irrelevant for two reasons.  First, the fact that immunocompromised individuals were included as eligible for BUMC's COVID-19 medical exemption policy demonstrates that BUMC was aware of the "connection."  App. at 12-13, and 88-89; App. at 96, and 111-112 (Ex. A at 97:19-

---

[4]App. at 3, 36 (Ex. A at 20:5-8, and Dep. Ex. 1, at p.12).

[5]*Id.*

98:10 and Dep. Ex. 24; Ex. B 113:13-25, and Dep. Ex. 50). Second, this is neither a medical malpractice nor a negligence lawsuit, and whether BUMC was "aware" of an alleged "medical" connection is not part of any element of Plaintiff's claims or BUMC's defenses in this lawsuit. Even if it were, Dr. Koliwad admits that from the outset, BUMC's COVID-19 exemption policy exempted those who are immunocompromised, including those with diabetes. App. at 10; 13 (Ex. A at 48:9-18; 98:2-10). Again, Dr. Koliwad's purported testimony can't and won't assist the trier of fact on any issue in this case and is therefore irrelevant.

### 3. *"[I]t was medically unreasonable for Hicks' exemption request "to have failed to result in an exemption."[6]*

Once again and as discussed above, it's undisputed that BUMC granted Plaintiff's COVID-19 exemption request, *which by its plain language exempted her from working with COVID-19 positive patients*; therefore, this testimony is simply irrelevant. Moreover, there is no legal or factual issue in this case regarding whether BUMC's business decision that the COVID-19 medical exemption didn't apply to the PAT Department was "medically unreasonable." Allowing Dr. Koliwad to inject such testimony into this matter effectively converts this into a quasi-medical malpractice and/or negligence case where the issue would not be whether BUMC discriminated against Plaintiff due to a disability, rather, whether its business

---

[6]*Id.*

judgment (which includes its underlying medical judgment) related to an exemption policy issued during a global pandemic was somehow "medically unreasonable" based on "a reasonable degree of medical and scientific certainty." Ironically, Dr. Koliwad admits BUMC's exemption policy was "a very good business decision." App. at 16 (Ex. A at 120:24-122:6).

### 4. *"BUMC should've amended the exemption criteria to include high-risk conditions..."*[7]

Once again and as discussed above, this "expert" testimony is irrelevant because it's undisputed that at the inception of its COVID-19 exemption policy, BUMC included as eligible those with high-risk conditions, i.e., those who are immunocompromised. Even if Baylor hadn't included immunocompromised individuals as eligible for its COVID-19 medical exemption policy, there's no legal claim or defense related to which this testimony is relevant. Stated differently, there is no issue in this case for the Court or a jury to resolve regarding whether Baylor's business judgment to allow the PAT Department to perform nasal swabs of pre-screened patients was reasonable or unreasonable. In fact, allowing such testimony would, as discussed above, inject into this case issues regarding medical decisions made at the highest level of BUMC's operations during the COVID-19 pandemic, which are not on trial here. *See LeMaire v. Louisiana*, 480 F.3d 383, 391 (5th Cir.

---

[7]*Id.*

2007) (Court's job is not to engage in second-guessing of an employer's business decisions because the anti-discrimination laws do not require an employer to make proper decisions, only non-discriminatory/non-retaliatory ones.). And, Plaintiff has already admitted that, with respect to how it applied the COVID-19 exemption policy, Baylor wasn't intentionally trying to force her to retire early. App. at 105 (Ex. B at 186:7-11).

### 5. *"Ms. Hicks [sic] request for an exemption…should've been granted."[8]*

This "expert opinion" is irrelevant for two primary reasons. First, it's nothing more than an impermissible legal conclusion. *See Drake v. Spring Indep. Sch. Dist.*, No. 20-20376, 2021 U.S. App. LEXIS 22187, *11 (5th Cir. July 27, 2021) (finding that an expert's purported conclusions that an employee "engaged in protected activity," that her requests for accommodation "did not pose an undue hardship," and that the employer could not "establish and/or justify a reason" why the employer couldn't accommodate a request were properly excluded as "textbook legal conclusions."). Second and as previously addressed herein, Plaintiff's exemption request *was granted*.

---

[8] *Id.*

6.    ***"There was no medically justifiable reason to ask an individual of Ms. Hicks' age …to expose herself to individuals who could be infected with COVID-19."[9]***

This testimony is irrelevant because, as previously argued, there are no medical issues to be decided in this disability discrimination case.

7.    ***"Moreover, failing to exempt such individuals is not justifiable on ethical grounds."[10]***

This testimony is irrelevant because there are no ethical issues to be decided in this disability lawsuit, and further, Dr. Koliwad admits the "ethics" are his own and not attributable to any published information or data, which renders his opinion speculative and unreliable.  App. at 23 (Ex. A at 146:18-148:5).

In short, Dr. Koliwad admits he's not offering any expert testimony related to the ADA, the interactive process, or any alleged failure by BUMC to accommodate Plaintiff:

Q.    Is it fair to say you're not holding yourself out as an expert today in your testimony as an expert in the ADA or ADAAA?

A.    That's correct.

App. at 6 (Ex. A at 33:17-20).

*****************************

Q.    And you're not here to opine on whether she, Ms. Hicks, fulfilled her interactive process duties, are you?

---

[9]App. at 3, and 37 (Ex. A at 20:5-8, and  Dep. Ex. 1, at p. 13).

[10]*Id.*

> A.    I'm not here to opine on that.

App. at 18 (Ex. A at 126:13-16).

> ******************************

> Q.    You're not purporting to testify about whether or not BUMC reasonably accommodated her, are you?

> A.    No, I'm not.

App. at 22 (Ex. A at 142:7-10).

Instead, Dr. Koliwad seeks to provide purported "expert" testimony on a completely irrelevant subject matter---the "*medical bases*" for BUMC's exemption policy:

> Q.    Okay. So is it fair to say, then, that what you're really doing in your report---particularly in this Section 5---is *you're questioning the medical bases for BUMC's exemption and how it was applied for obese, hypertensive, diabetics*? Is that fair?

> A.    Correct. That's fair.

App. at 21 (Ex. A at 141:10-16) (emphasis added). With respect to the ADA claims Plaintiff asserts, there are no elements or issues related to whether BUMC had a "medical bas[i]s" for its exemption policy, and <u>Dr. Koliwad concedes his testimony has nothing to do with Plaintiff's legal claims</u>:

> Q.    And my question for you is:  To what element of her claim---she's claiming disability discrimination. ***How is your medical opinion about a medical issue relevant to her disability claim?***

> A.    I'm not---***I'm not putting forward my expertise with respect to the specific claim of---of disability that she's been subjected to***

*as a result of all this*.

App. at 17 (Ex. A at 122:7-15) (emphasis added).

*****************************

Q.    And you don't know, as you sit here, how your medical opinion as to her diabetic condition relates to any of the legal claims in this lawsuit.  Is that fair?

A.    That's fair.

App. at 17 (Ex. A at 123:6-10). Based on Dr. Koliwad's own admissions, his purported expert testimony is not only irrelevant but, as argued above, would improperly introduce elements of medical malpractice or negligence into this case. App. at 16 (Ex. A at 121:22-25).  Dr. Koliwad offers no expertise in any subject matter related to the legal claims in this case which could assist a jury; therefore, his expert opinions should be struck in their entirety as irrelevant.

C.    **The Court should strike Dr. Koliwad's testimony because it's unreliable**.

In addition to the purported expert testimony addressed above, Dr. Koliwad admits to additional inaccuracies and speculative testimony that is patently unreliable:

1.    *"This loosening of restrictions…[meant Plaintiff] would likely be involved in caring for COVID-19 infected individuals."*[11]

Dr. Koliwad admits this testimony is patently false:

---

[11] App. at 3, and 30 (Ex. A at 20:5-8, Dep. Ex. 1, at p. 6).

Q.    You would agree with me that based on all of the exemption documents we've looked at---and we've looked at a number of them---in none of them would an exempt person, someone who was granted the COVID-19 exemption, none of them would be caring for a COVID-19 positive patient? That's what the policy says, correct?

A.    That's what the policy says.

App. at 14 (Ex. A at 104:8-15).

2.    *"Because of this reversal by BUMC and the fact that Nurse Hicks was now being expected to work as usual…she felt forced to put in for retirement…"[12]*

This testimony is inaccurate for two reasons.  First, Dr. Koliwad admits there was no reversal in BUMC's COVID-19 exemption policy.  App. at 17-18 (Ex. A at 125:6-126:12). Second, Dr. Koliwad has no personal knowledge related to Plaintiff's admissions that despite the fact BUMC offered her multiple accommodation options to prevent her from conducting nasal swabs on prescreened patients, she rejected every one of them, flatly refused to suggest any alternative accommodations other than the only one she wanted, and failed to search within BUMC's system, with the assistance offered by Human Resources, for an alternative position in a  non-patient-facing position.  App. at 18; 93; 94; 95; 98; 99; 100; 101-102; 102; 104; 106-107; 107 (Ex. A at 127:2-20; 128:1-10; Ex. B at 50:25-51:23; 57:7-15; 61:13-18; 143:12-25; 145:2-11; 146:23-25; 147:2-6; 151:18-25; 154:17-155:2; 157:15-158:2; 162:2-

---

[12]App. at 3, and 31-32 (Ex. A at 20:5-8, and Dep. Ex. 1, at pp. 7-8).

14; 163:17-19; 164:2-19; 185:5-7; 197:14-198:7; 199:22-25; 200:1-3;).

Ironically, Dr. Koliwad admits Plaintiff failed to engage in the interactive process because she refused to provide alternative accommodations, after rejecting those offered by BUMC, that would've prevented her from conducting nasal swabs on prescreened patients.  App. at 23 (Ex. A at 148:20-149:3).

### 3. *"This [BUMC's post-retirement offer to Plaintiff to work in areas of "greatest need"] of course meant that she would once again be asked to care for individuals likely to be infected with COVID-19."[13]*

Dr. Koliwad admits he has no personal knowledge related to BUMC's "greatest need" at the time BUMC made Plaintiff a post-retirement employment offer.  App. at 19 (Ex. A at 131:1-8).  He further admits (as did Plaintiff) that the post-retirement letter from BUMC to Plaintiff specifically states Plaintiff wouldn't be required to work "at the bedside" with COVID-19-positive patients.  App. at 19, and 90; App. 103 and 116 (Ex. A at 131:20-132:7, and Dep. Ex. 26; Ex. B at 176:1-19, and Dep. Ex. 80).

### 4. *"…she unnecessarily forewent more substantial seniority-based retirement benefits."[14]*

Dr. Koliwad admits he has no personal knowledge regarding whether BUMC offered and Plaintiff forewent any seniority-based retirement benefits.  App. at 20

---

[13]App. at 3, and 32 (Ex. A at 20:5-8, and Dep. Ex. 1, at p. 8).

[14]*Id.*

(Ex. A at 135:13-21; 136:5-13).

> **5.**    ***"As such, Ms. Hicks chose to remain retired and has unfortunately remained so as to this day."***[15]

Dr. Koliwad admits, although he claims he read Plaintiff's deposition transcript, that he didn't see Plaintiff's testimony that, far from being "forced" to remain retired, she simply chose to forego seeking any other employment.  App. at 20; 103 (Ex. A at 135:2-12; Ex. B at 177:3-8).  In sum, the Court should strike Dr. Koliwad as an expert because his purported expert testimony isn't based on facts and is therefore unreliable.

## CONCLUSION AND PRAYER

This is a disability discrimination case, not a medical malpractice or negligence case. Dr. Koliwad knows nothing about the ADA, reasonable accommodations, or the interactive process, purports to offer expert testimony on irrelevant issues, and further proffers expert testimony with no basis in fact, all of which render him unqualified as an expert.  Most importantly, Dr. Koliwad concedes he has no opinions related to the legal or factual issues in this case and instead, seeks to challenge the medical bases for BUMC's COVID-19 medical exemption policy, which is not only irrelevant but would be highly prejudicial to BUMC in this case.

This is *not* a case where Plaintiff's diabetic condition is at issue, nor is it a

---

[15] *Id.*

case where the effectiveness of BUMC's proposed accommodations is at issue, because Dr. Koliwad admits BUMC's accommodation proposals *would've been effective* at preventing Plaintiff from performing nasal swabs of prescreened patients. App. at 18 (Ex. A at 127:11-20; 128:1-10). Thus, Dr. Koliwad is unqualified to render any expert testimony in this case.

For the reasons set forth herein, BUMC asks the Court to enter an order: (1) granting this Motion in its entirety; (2) striking Dr. Koliwad as an expert in this case, including striking all of his testimony and his expert report in its entirety; and (3) granting BUMC any further relief to which it may be entitled.

Respectfully submitted,

*/s/ Alicia Sienne Voltmer*
Alicia Sienne Voltmer
Texas Bar No. 00797605
alicia.voltmer@gtlaw.com
Peter S. Wahby
Texas Bar No. 24011171
peter.wahby@gtlaw.com

**GREENBERG TRAURIG, LLP**
2200 Ross Avenue, Suite 5200
Dallas, Texas 75201
Telephone: (214) 665-3600
Facsimile: (214) 665-3601

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF CONFERENCE

I certify that on November 16, 2023, I conferred with Plaintiff's counsel regarding this Motion and he is opposed to the relief requested.

*/s/ Alicia Sienne Voltmer*
Alicia Sienne Voltmer


## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was filed and served on all parties of record on this the 30th day of November, 2023 using the Court's CM/ECF system.

*/s/ Alicia Sienne Voltmer*
Alicia Sienne Voltmer


## CERTIFICATE OF WORD COUNT

I certify that in accordance with this Court's Judge-Specific Rules, the word count for this document is 4584, including footnotes, but excluding the case caption, table of contents, table of authorities, signature block, and certificates.


*/s/ Alicia Sienne Voltmer*
Alicia Sienne Voltmer